UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH B. MORGAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>　　　　Defendant. | No. 2:17-cv-0240 DB<br><br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion evidence, plaintiff's testimony, and the disability rating of the Department of Veterans Affairs constituted error. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

////

////

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 5 & 6.)

PROCEDURAL BACKGROUND

On September 9, 2014, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on June 2, 2012. (Transcript ("Tr.") at 18, 97.) Plaintiff's application was denied initially, (id. at 113-17), and upon reconsideration. (Id. at 118-23.) Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on May 20, 2016. (Id. at 34-85.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 34-36.)

In a decision issued on July 29, 2016, the ALJ found that plaintiff was not disabled. (Id. at 29.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since June 2, 2012, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: low back strain; status post laparoscopic fundoplication of hiatal hernia; ventral hernia; gastroesophageal reflux disease; tinnitus; obesity; posttraumatic stress disorder; and major depressive disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: he could lift 20 pounds occasionally and 10 pounds frequently; he could stand and/or walk for 6 hours out of an 8-hour workday; he could sit for 6 hours out of an 8-hour workday; he could occasionally climb ramps and stairs; he is unable to climb ladders, ropes, or scaffolds; he could occasionally balance, stoop, kneel, crouch, and crawl; he must avoid concentrated exposure to extreme cold, extreme heat, vibration, hazardous machinery, and heights; he is limited to simple, unskilled non-public work involving occasional fellow employee contact.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

////

7. The claimant was born on December 28, 1977 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 2, 2012, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 20-29.)

On November 29, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's July 29, 2016 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on February 1, 2017. (ECF. No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion argues that the ALJ committed the following three principal errors: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ's treatment of plaintiff's subjective testimony constituted error; and (3) the ALJ's treatment of the disability rating of the Department of Veterans Affairs ("VA") constituted error.[2] (Pl.'s MSJ (ECF No. 14) at 9-22.[3])

////

---

[2] The court has reordered plaintiff's claims for purposes of clarity and efficiency.

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

I.  Medical Opinion Evidence

Plaintiff argues that the ALJ's treatment of the medical opinion evidence constituted error. (Id. at 18-22.) The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

    A.  Dr. Melinda Keenan

Here,  On April 12, 2013, Dr. Melinda Keenan, a psychologist, explained:

> Mr. Morgan's PTSD is due directly to his 2 tours of duty in Iraq (2005, 2006-2007) as an infantryman with USMC. Mr. Morgan experience[d] many traumatic events including killing, and witnessing members of his platoon killed. He was also required to remove the personal effects of those KIA under his charge. These incidents have had a lasting effect on this veteran.

(Id. at 431.)

Dr. Keenan began treating plaintiff for Chronic Severe Post Traumatic Stress Disorder ("PTSD") on January 13, 2012. (Id.) After treating plaintiff for more than a year, Dr. Keenan opined:

> Mr. Morgan has total occupation and social impairment; he is in a constant state of agitation and irritability and has frequent aggressive thoughts towards others. His emotional reactions to situations often appear grossly inappropriate to others. He has deficiencies in most areas of his life including family relationships, judgment, thinking, and mood. He does experience suicidal ideation; near-continuous agitation and depression affecting his ability to function independently, appropriately and effectively. He has very low stress tolerance and cannot adapt to stressful circumstances, especially social situations such as work (or a work-like setting); Mr. Morgan also struggles with severe memory and concentration problems due to his PTSD, and related depression. I would place Mr. Morgan's current Global Assessment of Functioning (GAF)[4] at 43 reflecting his serious symptoms and severe incapacity in social and occupational functioning. Mr. Morgan is very intelligent and capable individual who has shown great commitment to his treatment and he works hard to manage his symptoms. Unfortunately, both disorders have a chronic course and, despite medications and psychotherapy, the veteran remains severely impaired. Mr. Morgan, in my opinion, is totally and permanently disabled, unemployable and not a candidate for rehabilitation at this time.

(Id.)

### B. Dr. Robert Schneider

On May 19, 2014, Dr. Robert Schneider, a clinical psychologist and PTSD specialist, essentially concurred with, and expounded on, Dr. Keenan's opinion. In this regard, Dr. Schneider explained that plaintiff initially attended individual counseling with Ugo Punteri, a Licensed Clinical Social Worker ("LCSW"). (Id. at 429.) Thereafter, plaintiff attended a PTSD education series, completed a 10-month trauma-processing group facilitated by Dr. Schneider and

---

[4] A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). A GAF score in the range of 41 to 50 denotes: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34. Moreover, "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014).

Dr. Keenan, and was then participating in an aftercare group facilitated by Dr. Schneider and Robert Baumgardner, a Licensed Marriage and Family Therapist. (Id.)

Despite "one of the strongest and most sustained efforts to address his combat PTSD" that Dr. Schneider had "ever seen," and plaintiff's "extremely hard work over the past 2 years" in an "intensive, healing-focused therapy program," plaintiff continued to "report, and exhibit, unremitting and pervasively disabling PTSD symptoms arising directly from his repetitive combat traumas in Iraq." (Id.)

After recounting plaintiff's symptoms, many of which were also found by Dr. Keenan, Dr. Schneider provided the following summation:

> Mr. Morgan's PTSD symptoms are pervasively disabling across all functional domains: mood, thinking, judgment, ability to form and maintain effective relationships, and capacity to work. As a result, I estimate his current Global Assessment of Functioning (GAF) at 40. Given the persistence of his extreme PTSD symptomatology despite intensive psychotherapy over the past 2 years, I expect his GAF to remain at least this low for the foreseeable future. Furthermore, it is my clinical opinion that Mr. Morgan is permanently and totally disabled, and 100% unemployable.

(Id. at 430.)

### C. ALJ's Treatment of Treating Physician Opinions

Despite acknowledging that these two doctors "cared for and/or treated the claimant" and "provided bases for their opinions within their letters," the ALJ afforded these opinions "little weight." (Id. at 27.) In support of this determination, the ALJ asserted that these treating physician opinions were "inconsistent with multiple points in the treatment record." (Id.) The ALJ, however, does not provide any support for this vague and conclusory assertion.

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

The ALJ goes on to find that the opinions are "inconsistent with the claimant's admitted response to medication as discussed" elsewhere in the ALJ's opinion. (Tr. at 27.) In this regard,

7

the ALJ asserted that these opinions were rendered during "a period in which the claimant admitted that he had not taken his medication." (Id.) And that "it only required three months after starting medication that the claimant reported that this mood was more stable, anxiety decreased, and he was able to be more social in public." (Id.)

Although the opinions may have been rendered during a period where the plaintiff was not complaint with his medication, the treating relationship began prior to that date and spanned years of intensive therapy. Moreover, the record cited by the ALJ in support of this assertion is to an October 2, 2015 progress note. (Id. at 492.) That record reflects, however, that plaintiff continued to experience irritability and severe anxiety even after being compliant with his medication. (Id. at 492-93.) And plaintiff's sleep was only slightly improved. (Id. at 492.) Thereafter, plaintiff continued to suffer anxiety and sleeplessness as a result of his PTSD. (Id. at 474, 489.) And, as discussed more fully below, on February 6, 2016, the VA determined that plaintiff's PTSD disability had increased to 100 percent disabling effective October 15, 2015. (Id. at 437.)

For the reasons stated above, the court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting the opinions of Dr. Keenan and Dr. Schneider. Accordingly, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion evidence constituted error.

II. Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ failed to offer clear and convincing reasons for rejecting plaintiff's testimony concerning the severity of plaintiff's mental health impairments. (Pl.'s MSJ (ECF No. 14) at 9.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ

8

> may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, in relevant part, the ALJ recounted plaintiff's testimony, stating:

> The claimant alleges that he takes medication to stabilize and enhance his moods. He fears leaving his house. He experiences bouts where he does not want to leave his bed. He has urges to monitor his house and surroundings. He has difficulty being in crowds and at sporting events. He often experiences new triggers for his psychiatric symptoms for which he must find ways to cope. He keeps a log of his symptoms, which he does not feel comfortable sharing with his wife. He is forgetful and his wife must often remind him.

9

(Tr. at 23.)

With respect to this testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record[.]" (Id.)

A. <u>Inconsistencies</u>

The first reason offered by the ALJ in support of this finding, was the ALJ's determination that plaintiff's allegations were inconsistent with evidence that plaintiff "responded to treatment." (Id. at 24.)

The ALJ stated:

> . . . the claimant's allegations of mental issues are inconsistent with clinical indications that show that he has otherwise responded to treatment. For example, group therapy progress notes from June 2012 through February 2015 at the Department of Veterans Affairs repeatedly state that the claimant was "active and emotionally engaged" in his sessions, he contributed to the discussions, and he in fact supported others in the group with "thoughtful, empathic feedback." Despite the claimant's testimony, Melinda Keenan, the claimant's readjustment counselor, stated at the end of his group therapy that the claimant "made great progress" in "resolving" his combat trauma as well as in building friendships and challenging himself to be more connected in relationships.[5]
>
> The claimant continued to improve even after his group therapy. When the claimant presented for medication management on July 7, 2015, he reported increased symptoms but that that (sic) he had stopped his medication "since 2013." Within three months, October 2, 2015 progress noted state that the claimant felt that his "mood is more stable," his anxiety was less, and he was able to go out in public more often. December 11, 2015 progress notes show that the claimant reported that "his mood and temper have been good and well controlled except for days that he attends counseling. Progress notes during this visit and subsequent visits state that the claimant had improved symptoms when he took his medication even though he only had "partial" medication compliance.[6] January 6, 2016

---

[5] As noted above, it seems Dr. Schneider and Dr. Keenan also served as the readjustment counselors for plaintiff's group therapy sessions.

[6] It appears that plaintiff's difficulty in taking the prescribed medications stemmed from his concern that they impaired his ability to watch his baby and because they caused erectile dysfunction. (Tr. at 493, 500). A plaintiff's credibility is not harmed by a failure to follow a prescribed treatment for a good reason. See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007)

10

> evaluation notes state that the claimant presented with "[n]o unusual behaviors observed." Notably, the claimant has improved to the point that he testified he purchased season tickets for professional basketball games, for which he attended 15 to 20 games last season. Admittedly, the claimant testified that he purchased tickets for seats that are somewhat less confined.

(Id.) (citations omitted).

That plaintiff "responded to treatment" and "continued to improve even after his group therapy" is not a clear and convincing reason for rejecting plaintiff's testimony. "Improvement with treatment is to be expected." Morales v. Berryhill, 239 F.Supp.3d 1211, 1216 (E.D. Cal. 2017). "That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001).

The ALJ's reasoning relies on references to vaguely positive indications, such as plaintiff being "active and emotionally engaged" in his therapy sessions, contributing to the discussions, providing "thoughtful, empathic feedback," making "great progress" in "resolving" his combat trauma, a report that plaintiff's "mood is more stable," having "improved symptoms," etc. (Id.) It is entirely unclear, however, why those findings are inconsistent with plaintiff's testimony that plaintiff takes medication to stabilize and enhance his mood, fears leaving his house, has difficulty in crowds, experiences new triggers for his psychiatric symptoms, etc. Moreover, in relying on a few examples of vague indications of engagement and progress, the ALJ's decision ignored evidence that supported plaintiff's testimony.

For example, an April 7, 2017 progress note, recounted that plaintiff "shared his experience[e] of being up all night thinking about a friend who had been killed during deployment but not being able to tell his wife that is why he slept late." (Id. at 312.) A July 14, 2014 progress note recounted that plaintiff "spoke about the difficulty of getting to crowded places and to places where the[re] is possible danger[.]" (Id. at 308.) A September 15, 2014

---

(good reason for failure to follow prescribed treatment may not be used as a basis to deny disability benefits); see also Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009) ("a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse").

11

progress note, from a psychologist, found plaintiff to be "[m]ood anxious, affect slightly constricted." (Id. at 306.)

The Ninth Circuit has explained that:

> … it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ's reasoning further relied on evidence taken out of context by finding that plaintiff "has improved to the point that he testified . . . he attended 15 to 20 games last season." (Tr. at 24.) More accurately, plaintiff testified as follows:

> I don't mean to make this a long story, but I literally was talking on my phone with my psychiatrist. I said I am going to force myself to go out in public in a crowd of a 1,000 at least once a month or more. And that, as soon as I hung up with him, the phone rang and it was a Kings representative trying to sell me season tickets. And I laughed in his face and I said no way. There is no chance I'm doing that. And then I thought maybe this is God's way of forcing me outside. So I talked to him for a few minutes, and I told him I had to tour the arena when I was, no one else was there, and find seats that I could sit in. I found seats with cement on two sides of me so that I can be kind of locked into it if something were to happen . . . . So I arrive two hours before everybody else, an hour and a half sometimes, go in when no one is there, sit in my seat. I know the usher. Me and him will talk while I wait for the rest of the people to arrive. At the end of the game I wait for everybody to leave. He clears the section and he leaves me alone because I've explained to him why I'm waiting for everyone else.

(Id. at 54-55.) That plaintiff went through these efforts, 15 to 20 times a year, in an attempt improve his symptoms, is not a clear and convincing reason for rejecting his testimony. "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

B. Improper Reliance on Dr. David Richwerger's Opinion

The other reason offered by the ALJ for rejecting plaintiff's testimony was the ALJ's finding that plaintiff's allegations were "inconsistent with the opinion evidence, which suggests that he has considerable work-related abilities despite his impairments." (Tr. at 25.) To support

this finding that ALJ relied on the opinion of psychiatrist Dr. David Richwerger, who examined plaintiff on November 25, 2014. (Id.) Dr. Richwerger found that plaintiff's limitations ranged from no impairment to only mildly impaired. (Id.) The ALJ also relied on the opinion of a non-examining physician. (Id.)

With the exception of a copy of Dr. Kennan's April 12, 2013 opinion, Dr. Richwerger's opinion was formulated without review of any of plaintiff's treatment records. (Id. at 287.) Moreover, Dr. Richwerger's opinion stands in stark contrast to the opinions offered by the two treating sources discussed above, which the ALJ improperly rejected.

Dr. Richwerger's opinion was also inconsistent with the November 30, 2012 opinion of, LCSW Ugo Punteri. Punteri opined that plaintiff's PTSD was "making employment extremely difficult" due to sleep impairment, anxiety, depression, panic attacks, intrusive thoughts, irritability and/or outbursts of anger, difficulty concentrating, mild memory loss, disturbances of motivation and mood, difficulty in interpersonal relationships, avoidance behavior, social isolation, feelings of detachment, hyper vigilance, and restricted range of affect. (Id. at 434.)

As an LCSW, Punteri's opinion was treated as an "other source" opinion. In addition to evidence from acceptable medical sources, a plaintiff may offer opinions from "other sources" to establish the severity of impairments. See 20 C.F.R. §§ 404.1513(d), 416.913(d). However, the ALJ may afford less weight to other source opinions. Nonetheless, the ALJ may only reject evidence from an "other source," if the ALJ gives a germane reason for doing so. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012); Bain v. Astrue, 319 Fed. Appx. 543, 546 (9th Cir. 2009); Petty v. Colvin, 954 F.Supp.2d 914, 926 (D. Ariz. 2013) ("An ALJ is free to discount testimony from other sources, but as the Commissioner concedes, he must give reasons germane to each witness for doing so.").

The ALJ discussed Punteri's opinion along with the opinions of Dr. Keenan and Dr. Schneider and reject it for the same reasons. (Tr. at 27.) Punteri's opinion, however, was rendered on November 30, 2012—prior to the date of plaintiff's medication non-compliance and years prior to the date the ALJ alleged plaintiff's condition improved due to medication compliance. (Id. at 434.) In light of this, and having already found that the ALJ failed to provide

13

specific and legitimate reasons for rejecting Dr. Keenan and Dr. Schneider's opinions, the court also finds that the ALJ failed to offer a germane reason for rejecting Punteri's opinion.

Accordingly, the ALJ failed to offer clear and convincing reasons for rejecting plaintiff's testimony. Plaintiff, therefore, is also entitled to summary judgment on the claim that the ALJ's treatment of plaintiff's subjective testimony constituted error.

III. <u>VA Disability Rating</u>

On February 6, 2016, the VA determined that plaintiff's PTSD disability rating increased from 70 percent disabling to 100 percent disabling effective October 15, 2015. (Tr. at 437.) Plaintiff argues that the ALJ's treatment of this evidence constituted an error. (Pl.'s MSJ (ECF No. 14) at 16-18.) The ALJ's July 29, 2016 decision discussed the VA's determination but afforded the determination "little weight." (Tr. at 28.)

The first reason offered by the ALJ for affording the VA's decision little weight was that the VA's "disability ratings and standards of whether a person is employable are not necessarily correlative of a residual functional capacity finding under the Social Security Act." (Id.) However, the Ninth Circuit has found that when an ALJ evaluates a VA disability rating "great weight to be ordinarily warranted 'because of the marked similarity between these two federal disability programs.'" <u>Luther v. Berryhill</u>, 891 F.3d 872, 876 (9th Cir. 2018) (quoting <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002)). However, because the "'criteria for determining disability are not identical'" under the two disability programs, an ALJ may "'give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record.'" <u>Valentine v. Commissioner Social Sec. Admin.</u>, 574 F.3d 685, 695 (9th Cir. 2009) (quoting <u>McCartney</u>, 298 F.3d at 1076).

The second reason offered by the ALJ in support of assigning little weight to the VA's disability determination, was that the determination was allegedly "premised upon a[n] . . . examination dated January 6, 2016," which found "no unusual behaviors observed." (Tr. at 28) (alteration omitted). The ALJ went on to state:

> In fact, the examination notes do not show any additional objective testing as the basis for their opinion but merely list the claimant's symptoms and clinical history prior to summarily finding that the

14

> claimant is "too fragile to with (sic) the demands, interactions with supervisors, peers and/or the public to hand a full-time job."

(Id.)

"Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017); see also Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987) ("unlike a broken arm, a mind cannot be x-rayed").

Moreover, the ALJ's characterization of the record is incomplete. In this regard, the February 6, 2016 Rating Decision reflects that it was based on more than the January 6, 2016 examination. Veterans Affairs Medical Center treatment records from April 16, 2009 through January 4, 2016, were also considered among other evidence. (Tr. at 438.)

The January 6, 2016 examination also provided more than the single check the box response and abbreviated quote reflected by the ALJ's decision. The January 6, 2016 examination was conducted by clinical psychologist Dr. Douglas Wood. (Id. at 486.) Dr. Wood noted that plaintiff was being "currently followed by a staff psychiatrist who prescribed him" medication and was "also followed by Dr. Keenan and Dr. Schneider." (Id. at 484.) Plaintiff "was going there weekly and has taken about all of the course they have." (Id.)

Dr. Wood then completed the PTSD Diagnostic Criteria checklist. (Id.) Dr. Wood's examination found that plaintiff's symptoms included, in part, "Intense or prolonged psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event," "Marked physiological reactions to internal or external cues that symbolize or resemble an aspect of the traumatic event(s)," "Persistent and exaggerated negative beliefs or expectations," "Irritable behavior and angry outburst," "Hypervigilance," and "Exaggerated startle response." (Id. at 484-85.) Dr. Wood found that plaintiff's symptoms "cause clinically significant distress or impairment in social, occupation, or other important areas of functioning." (Id. at 485.)

////

In the remarks sections, Dr. Wood stated:

> Veteran is seen as meeting criteria for total occupational and social impairment. He is seen as too fragile to with (sic) the demands, interactions with supervisors, peers and/or the public to handle a full-time job. His history of unsuccessful attempts to keep full-time employment in spite of his strong desire to be fully employed is also supportive of his level of impairment.

(Id. at 486.)

The final reason offered by the ALJ for affording little weight to the VA's disability rating was simply the vague and conclusory statement that the rating was "inconsistent with the discussion above that the claimant has responded to treatment." (Id. at 28.) Not only does this reason fail to provide the court with any reasoning or evidence in support, but in addressing plaintiff's claims herein, the court has found that the "discussion above" referred to by the ALJ suffers from multiple errors.

Accordingly, the court finds that the ALJ failed to offer a persuasive, specific, or valid reason for affording little weight to the VA's disability rating. Plaintiff is, therefore, also entitled to summary judgment on this claim.

## CONCLUSION

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015)

("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record is fully developed and the ALJ failed to provide legally sufficient reasons for rejecting evidence. The undersigned is cognizant of defendant's argument that having found error, further proceedings are necessary for the ALJ to translate the evidence into a residual functional capacity determination. (Def.'s MSJ (ECF No. 17) at 16.) However, the opinions of plaintiff's two treating physicians, a LCSW, and the VA are that plaintiff is totally disabled. Which is consistent with plaintiff's testimony. If any of that evidence, let alone all of it, were credited as true, the ALJ would be required to find plaintiff disabled on remand. Under these circumstances, remand for further administrative proceedings would serve no useful purpose.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 17) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the immediate award of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: September 11, 2018

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\morgan0240.orddlb